[No. E052864. Fourth Dist., Div. Two. May 16, 2012.]

MARTHA HOOVER, Plaintiff and Respondent, v.
AMERICAN INCOME LIFE INSURANCE COMPANY, Defendant and
Appellant.

COUNSEL

SNR Denton US, Joel D. Siegel, David Simonton and Leanna M. Anderson for Defendant and Appellant.

Law Offices of James M. Gilbert, James M. Gilbert; Law Offices of Joseph Antonelli, Joseph Antonelli, Janelle Carney; Law Offices of Darren D. Daniels and Darren D. Daniels for Plaintiff and Respondent.

OPINION

**CODRINGTON, J.—**

I

INTRODUCTION

Martha Hoover, plaintiff and respondent, worked as a sales agent for about four months for American Income Life Insurance Company (AIL), defendant and appellant. AIL appeals from an order denying its petition to compel arbitration of Hoover's civil action based on various Labor Code statutes. (Code Civ. Proc., § 1294, subd. (a).)

The underlying issue, which we do not resolve in this appeal, concerns whether Hoover was an employee of AIL or an independent contractor. She claims she was an employee, entitled to receive minimum wage, as well as reimbursement for work-related expenses and prompt payment of earned wages due upon termination. (Lab. Code, §§ 203, 1194, 2802.)[1] Hoover further contends her statutory labor claims are not subject to arbitration.

[1] All statutory references are to the Labor Code unless stated otherwise.

In opposition, AIL counters that Hoover was an independent contractor who was not entitled as an employee to receive minimum wage, reimbursement, or earned wages. Nevertheless, AIL contends Hoover's statutory labor claims are subject to arbitration as provided in the agent contract, as incorporated by the collective bargaining agreement (CBA).

We disagree with AIL. If Hoover was an employee with viable statutory labor claims, her claims are not subject to arbitration. If Hoover was an independent contractor she cannot assert statutory labor claims as an employee and therefore the question of arbitration seems irrelevant. In either instance, the trial court correctly denied AIL's petition to compel arbitration. Additionally, AIL's 15-month delay in petitioning for arbitration constituted a waiver of the right to compel arbitration.[2]

II

FACTUAL AND PROCEDURAL BACKGROUND

There is little dispute between the parties about the objective facts. Instead, both parties attempt to characterize the facts in a way most favorable to their positions. We attempt to offer a more neutral summary of the record on appeal.

A. *Preliminary Facts*

AIL is a Texas-based company that sells life insurance policies in California. Hoover worked for AIL from March 2008 to June 2008. Hoover terminated her relationship with AIL voluntarily.

Hoover's relationship with AIL was partly governed by the CBA between AIL, the Office and Professional Employees International Union, Local 277 (OPEIU Local 277), and the state general agents, like Hoover. The CBA contains the following disclaimer: "Nothing contained herein shall be construed to create the relationship of employer and employee . . . . [¶] The agent . . . shall be acting on the agent's . . . own behalf and not an

---

[2] The conclusions we reach here avert any dependence, as urged by AIL, on two recent United States Supreme Court opinions, addressing the issue of class arbitrations for antitrust claims and consumer sales contracts. (*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. ___ [176 L.Ed.2d 605, 130 S.Ct. 1758]; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2d 742, 131 S.Ct. 1740].) "*AT&T* does not provide that a public right . . . can be waived if such a waiver is contrary to state law." (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 500 [128 Cal.Rptr.3d 854].) We also do not need to address the unconscionability argument and the continuing viability of *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669].)

employee . . . . The agent . . . shall refrain from holding themselves out as an employee." The CBA includes a section on grievance procedures, including discovery proceedings. Article 18 provides for agent compensation: "Compensation of agents shall be in conformity with contract. Agents shall have a written agreement. The agreement shall become part of this Agreement . . . ."

Hoover executed an agent contract which is incorporated into the CBA. The agent contract includes language indicating that the agent is an independent contractor, not an employee of the company: the agent shall be responsible for all expenses and furnish her own means of transportation, office, or place of employment; the agent has no fixed hours and is free to choose the time and manner in which services are performed; the agent is paid solely by commissions "in full satisfaction of all claims upon the Company [on] account of service or expenses under this contract."

The agent contract also contains an arbitration clause, requiring the parties to arbitrate disputes arising out of or relating to the agent contract if they are unable to resolve their disputes through informal negotiations or the grievance process outlined in the CBA: "In the event of any dispute or disagreement arising out of or relating to this contract, the parties shall use their best efforts to settle such disputes. To this effect, they shall negotiate with each other in good faith to reach a just solution. If the parties do not reach a just solution by negotiations as described above, the Agent agrees to utilize the grievance process as outlined in the OPEIU Local 277 agreement. If the dispute is not settled through the grievance process, then upon written notice by either party to the other, all disputes, claims, questions, and controversies of any kind or nature arising out of or relating to this contract shall be submitted to binding arbitration pursuant to the provisions of the collective agreement with OPEIU. The findings of the arbitrator shall be final and binding on all parties and their beneficiaries, successors, assigns or anyone claiming an interest in the contract."

B. *The Class Action Litigation*

In September 2009, plaintiff Hoover and coplaintiff Frances Williams filed a class action complaint against AIL, alleging that AIL had hired them to sell insurance as employees, not as independent contractors, and failed to reimburse them for business expenses and to pay minimum wage during training and earned wages due after termination. The complaint alleges four causes of action against AIL for alleged violations of statutory rights under the Labor Code and for alleged unfair business practices.

The first cause of action is for reimbursement of business expenses, such as auto mileage, under section 2802. The second cause of action is based on

sections 1194 and 1194.2 and on wage order No. 4-2001 from the Industrial Welfare Commission. Plaintiffs allege they were entitled to minimum hourly wages for training periods because they were not exempt under section 1171 as "outside salesm[e]n." The third cause of action asserts AIL violated section 203 by failing to pay all "earned wages" upon termination of employment with AIL. The fourth cause of action claims AIL engaged in an unfair business practice of misclassifying sales agents as independent contractors and violating the various Labor Code provisions, as well as Business and Professions Code section 17200 et seq.

Between September 2009 and December 2010, the parties conducted active litigation, including two removals to federal court by AIL, AIL's demurrer, an unsuccessful mediation, discovery disputes, and plaintiffs seeking and AIL opposing a temporary restraining order (TRO).

More specifically, AIL first removed the case to federal court in October 2009. AIL also filed a motion to dismiss the complaint in federal court. The federal district court granted Hoover's motion to remand the case to state court in December 2009. AIL filed a demurrer in state court in January 2010.

In February 2010, AIL propounded special interrogatories and document requests upon Hoover and noticed her deposition. Hoover propounded a special interrogatory requesting a putative class member contact list. In March 2010, AIL propounded additional special interrogatories as well as form interrogatories, requests for admissions and document requests. On April 5, 2010, AIL filed an answer to the complaint. None of the 22 affirmative defenses allege the existence of an arbitration provision.

In April 2010, the parties agreed to stay all discovery pending mediation. After mediation failed, Hoover filed a motion to compel disclosure of the putative class member contact information, which AIL opposed. AIL finally provided discovery responses, which Hoover deemed inadequate, in August 2010.

AIL finally made a demand for arbitration, which Hoover rejected in August 2010. In September 2010, Hoover filed an ex parte application for a TRO regarding AIL soliciting opt-out directives from putative class members. AIL's solicitation did not mention arbitration. AIL filed opposition but, before the matter was resolved, AIL filed a second notice removing the case to federal court. The case was eventually remanded to the trial court in December 2010.

C. *The Motion to Compel Arbitration*

On December 7, 2010, almost 15 months after the complaint was filed, AIL filed a motion to compel arbitration and to stay litigation of Hoover's

individual claims based on the arbitration provision in the agent contract. The hearings on the discovery disputes, the TRO, and the motion to compel all took place on January 12, 2011.

The trial court denied the motion to compel, ruling that Hoover's "statutory wage claims are not subject to arbitration because neither the arbitration agreement nor the CBA refers to the arbitration of statutory rights" and because "AIL has waived its rights to arbitrate . . . through its participation in the litigation process."

AIL has appealed, staying all trial court proceedings as to Hoover. (Code Civ. Proc., §§ 916, subd. (a), 1294, subd. (a).)

III

DISCUSSION

A. *Standards of Review*

The judgment or order forming the basis of the appeal is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193] ["All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."].) If the appealed judgment or order is correct on any theory, then it must be affirmed regardless of the trial court's reasoning, whether such basis was actually invoked. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117]; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473].) As the California Supreme Court stated long ago in *Davey*: "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey*, at p. 329.)

Even if the record demonstrates that the trial court misunderstood or misapplied the law, the ruling must be affirmed if it is supported by any legal theory. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980–981 [35 Cal.Rptr.2d 669, 884 P.2d 126].) "Because we review the correctness of the order, and not the court's reasons, we will not consider the court's oral comments or use them to undermine the order ultimately entered." (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451 [125 Cal.Rptr.2d 277].) If the decision itself is correct, there can be no prejudicial error from incorrect logic or reasoning. (*Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 610 [92 Cal.Rptr.2d 897].)

Whether the arbitration agreement in the agent contract signed by Hoover applies to the controversy at issue is a question of law, subject to de novo review: "When 'the language of an arbitration provision is not in dispute, the trial court's decision as to arbitrability is subject to de novo review.' " (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707 [111 Cal.Rptr.3d 876], quoting *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 771 [49 Cal.Rptr.3d 531].)

The question of waiver is generally one of fact. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [8 Cal.Rptr.3d 517, 82 P.3d 727]; *Roberts v. El Cajon Motors, Inc.* (2011) 200 Cal.App.4th 832, 841 [133 Cal.Rptr.3d 350].) The waiver issue may be reviewed de novo when the question is whether the superior court properly applied the correct legal standard to the undisputed facts: " 'When . . . the facts are undisputed and only one inference may reasonably be drawn, the issue [of waiver] is one of law and the reviewing court is not bound by the trial court's ruling.' [Citation.]" (*St. Agnes*, at p. 1196; see *Ruiz v. Sysco Food Services* (2004) 122 Cal.App.4th 520, 525, 528 [18 Cal.Rptr.3d 700] [denying arbitration was erroneous as a matter of law because the essential facts were undisputed and the applicable standard of review was de novo].)

Additionally, independent review may be appropriate if "the waiver issue presents a mixed question of fact and law," but is "predominantly legal" when the "historical facts are undisputed" because it " 'requires a critical consideration, in a factual context, of legal principles and their underlying values.' " (*McKesson HBOC, Inc. v. Superior Court* (2004) 115 Cal.App.4th 1229, 1235–1236 [9 Cal.Rptr.3d 812], citing *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

If the trial court's waiver ruling is reviewed under the substantial evidence test, this court must determine independently whether the trial court applied the correct legal standard: "[E]ven when a decision . . . is generally reviewed for abuse of discretion," the court "must determine . . . whether the [trial] court applied the correct legal standard." (*KB Home v. Superior Court* (2003) 112 Cal.App.4th 1076, 1083 [5 Cal.Rptr.3d 587].) When the substantial evidence test applies, moreover, a court cannot draw inferences based on "mere speculation or conjecture," but only from evidence that is " 'reasonable . . . , credible, and of solid value.' " (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 [29 Cal.Rptr.2d 191].)

## B. *AIL's Waiver of Arbitration*

At the outset, we conclude AIL waived the right to seek arbitration by actively litigating this action for more than a year and causing prejudice to Hoover.

■ Waiver of the right to arbitrate does not require a voluntary relinquishment of a known right. For example, a party may waive the right by an untimely demand even without any intent to forgo the procedure. In this circumstance, waiver is similar to "a forfeiture arising from the nonperformance of a required act." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 944 [118 Cal.Rptr.3d 613].) "In the arbitration context, '. . . "waiver" has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.' " (*St. Agnes Medical Center v. PacifiCare of California, supra,* 31 Cal.4th at p. 1195, fn. 4; see *Roberts v. El Cajon Motors, Inc., supra,* 200 Cal.App.4th at p. 840.)

■ A party seeking to prove waiver of a right to arbitration must demonstrate " '(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration.' " (*U.S. v. Park Place Associates, Ltd.* (9th Cir. 2009) 563 F.3d 907, 921.) The law favors arbitration, and waiver will not be " ' "lightly inferred." ' " The party claiming the other waived the right to arbitrate "bears a heavy burden of proof." (*St. Agnes Medical Center v. PacifiCare of California, supra,* 31 Cal.4th at p. 1195; see *Roberts v. El Cajon Motors, Inc., supra,* 200 Cal.App.4th at pp. 840–841.) ■ Under California law, questions of waiver and estoppel are determined by the court, not the arbitrator. (Code Civ. Proc., § 1281.2; see *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 982 [64 Cal.Rptr.2d 843, 938 P.2d 903].)

■ Where no deadline for demanding arbitration is specified in the agreement, a party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration. (*Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1043 [9 Cal.Rptr.2d 381, 831 P.2d 821]; *Johnson v. Siegel* (2000) 84 Cal.App.4th 1087, 1099 [101 Cal.Rptr.2d 412]; see *Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1157 [50 Cal.Rptr.2d 178].) What constitutes a "reasonable time" is a question of fact depending on the situation of the parties, the nature of the transaction, and the facts of the particular case, including any prejudice suffered by the opposing party because of the delay. (*Spear,* at p. 1043.)

In a legal malpractice action, plaintiff undertook extensive discovery, initiated and engaged in a meet and confer process, filed motions seeking to compel discovery responses, sought discovery sanctions, noticed defendant's

deposition, failed to respond to discovery that defendant initiated and only sought arbitration over six months after filing the complaint. This conduct constituted an unreasonable delay and signified an intent not to arbitrate. The steps plaintiff took in litigation prejudiced defendant. The arbitration process would have been more efficient and information was revealed in supplemental responses to discovery that might not have been revealed in arbitration. Therefore, plaintiff waived the right to arbitrate. (*Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 338–342 [123 Cal.Rptr.3d 595]; *Burton v. Cruise, supra,* 190 Cal.App.4th at pp. 942–943, 946–949.)

 Although participation in litigation of an arbitrable claim does not itself waive a party's right later to seek arbitration, at some point, litigation of the issues in dispute justifies a finding of waiver. (*St. Agnes Medical Center v. PacifiCare of California, supra,* 31 Cal.4th 1187, 1203.) The relevant factors establishing waiver include whether the party's actions are inconsistent with the right to arbitrate; whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; whether a party delayed for a long period before seeking a stay; whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration) had taken place; and whether the delay affected, misled, or prejudiced the opposing party. (*St. Agnes Medical Center,* at p. 1196; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30–31 [58 Cal.Rptr.3d 434, 157 P.3d 1029]; *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 13–15 [111 Cal.Rptr.3d 335]; *Roberts v. El Cajon Motors, Inc., supra,* 200 Cal.App.4th at p. 841.) Waiver does not require "relinquishment of a known right" under the California Arbitration Act. (*Zamora,* at pp. 5–6; *Burton v. Cruise, supra,* 190 Cal.App.4th at p. 944.)

 There is no fixed stage in a lawsuit beyond which further litigation waives the right to arbitrate. Rather, the court views the litigation as a whole in determining whether the parties' conduct is inconsistent with a desire to arbitrate. (*McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1980) 105 Cal.App.3d 946, 952, fn. 2 [164 Cal.Rptr. 751].) A defendant answering the complaint does not per se waive the right to demand arbitration later. (See *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782 [191 Cal.Rptr. 8, 661 P.2d 1088].) A defendant's removal of a case filed in state court to federal court does not by itself constitute an implicit waiver of the right to compel arbitration. (*Halim v. Great Gatsby's Auction Gallery, Inc.* (7th Cir. 2008) 516 F.3d 557, 562.) But, a defendant's removal of a case to federal court, coupled with participation in several months of litigation, waives the right to arbitrate because electing to proceed in federal court on an arbitrable dispute is presumptive waiver of the right to arbitrate. (*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.* (7th Cir. 1995) 50 F.3d 388, 390–391.)

■ The presence or absence of prejudice from the litigation is a determinative issue. (*St. Agnes Medical Center v. PacifiCare of California, supra*, 31 Cal.4th at pp. 1203–1204.) Because of the strong policy favoring arbitration, prejudice typically is found only where the petitioning party has unreasonably delayed seeking arbitration or substantially impaired an opponent's ability to use the benefits and efficiencies of arbitration. (*Ibid.*; *Augusta v. Keehn & Associates, supra*, 193 Cal.App.4th at pp. 338–342; *Burton v. Cruise, supra*, 190 Cal.App.4th 939, 947.) Prejudice is not found where the party opposing arbitration shows only that it incurred court costs and legal expenses in responding to an opponent's pleadings and motions. (*St. Agnes Medical Center*, at p. 1203.) Prejudice sufficient for waiver will be found where instead of seeking to compel arbitration, a party proceeds with extensive discovery that is unavailable in arbitration proceedings. (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 212–216 [69 Cal.Rptr.2d 79]; see *Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1364 [96 Cal.Rptr.2d 295]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 555, fn. 1, 558 [94 Cal.Rptr.2d 201].)

Waiver was found where defendant delayed six months in seeking arbitration to plaintiff's prejudice. Defendant filed two demurrers, engaged in attempts to schedule discovery, accepted and contested discovery requests, and failed to assert arbitration in the case management statement. Defendant did not produce the arbitration agreement until after the second demurrer hearing on the day the demurrer was overruled and slightly more than three months before the scheduled trial date. Defendant's actions substantially impaired plaintiff's ability to obtain the cost savings and other benefits provided by arbitration. (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1451–1452 [110 Cal.Rptr.3d 104].)

■ Here AIL did not introduce the question of arbitration for almost a full year and AIL conducted litigation in a style inconsistent with the right to arbitrate. The two failed efforts to remove the case to federal court and AIL's recalcitrant responses to discovery suggest its policy has been one of delay rather than seeking a more prompt and expeditious resolution through arbitration. (*Adolph v. Coastal Auto Sales, Inc., supra*, 184 Cal.App.4th at p. 1451.) During that time, AIL availed itself of discovery mechanisms like depositions not available in arbitration. AIL also solicited putative class members, in an effort to reduce the size of the class. (*Roberts v. El Cajon Motors, Inc., supra*, 200 Cal.App.4th at p. 847.) Hoover was certainly strongly affected and prejudiced by AIL's delay, causing significant legal expenses. (*Zamora v. Lehman, supra*, 186 Cal.App.4th at p. 19; *Burton v. Cruise, supra*, 190 Cal.App.4th at pp. 947–949; *Berman v. Health Net, supra*, 80 Cal.App.4th at p. 1366; *Davis v. Continental Airlines, Inc., supra*, 59 Cal.App.4th at p. 215.) Especially in class actions, the combination of ongoing litigation and discovery with delay in seeking arbitration can result

in prejudice. (*Roberts*, at pp. 844–847.) We deem the record supplies substantial evidence to support the trial court's finding that AIL waived any right to arbitrate the present dispute by prejudicial delay.

## C. *Arbitration of State Statutory Labor Claims*

■ Even if AIL had not waived its right to assert arbitration, we would decide AIL could not compel arbitration in the present case. Hoover's civil complaint is based on various Labor Code statutes. Section 1194 requires an employer to pay minimum wage. Sections 2802 and 2804 provide an employee cannot waive the right to reimbursement from an employer for necessary employment-related expenses. Sections 203, 219, and 229 provide that the right to timely payment of earned wages upon termination cannot be contravened by private agreement.

Citing federal preemption and the strong national policy favoring arbitration, AIL argues Hoover's statutory wage claims under the Labor Code and the Business and Professions Code are subject to arbitration under the Federal Arbitration Act (FAA), 9 United States Code section 1 et seq. The question before us is whether the parties agreed to resolve an employee's state statutory labor claims by arbitration.

■ As a general rule, state statutory wage and hour claims are not subject to arbitration, whether the arbitration clause is contained in the CBA or an individual agreement. The CBA cannot waive the right to sue under applicable federal or state statutes because these statutory rights "devolve on petitioners as individual workers, not as members of a collective organization." (*Barrentine v. Arkansas-Best Freight System, Inc.* (1981) 450 U.S. 728, 745 [67 L.Ed.2d 641, 101 S.Ct. 1437], overruled on other grounds in *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 [114 L.Ed.2d 26, 111 S.Ct. 1647]; see *Zavala v. Scott Brothers Dairy, Inc.* (2006) 143 Cal.App.4th 585, 592 [49 Cal.Rptr.3d 503] [rule applicable to wage claims under Lab. Code and Industrial Welfare Com. wage orders].)

In *Barrentine v. Arkansas-Best Freight System, Inc., supra*, 450 U.S. at page 730, employee-truckdrivers were not compensated for the time spent complying with federal regulations requiring they conduct safety inspections of their trucks. After a collective bargaining grievance was rejected, the plaintiffs filed a lawsuit in federal court alleging violation of the FLSA (Fair Labor Standards Act of 1938; 29 U.S.C. § 201 et seq.). (*Barrentine*, at pp. 730–731.) *Barrentine* determined that "[w]hile courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to

provide minimum substantive guarantees to individual workers." (*Barrentine*, at p. 737.) Individual rights under the FLSA, *Barrentine* concluded, cannot be abridged by contract or otherwise waived (*Barrentine*, at p. 740) because "congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum . . ." (*id.* at p. 745). *Gilmer v. Interstate/Johnson Lane Corp., supra*, 500 U.S. at page 34, which involved an arbitration clause in an individual's employment contract, "confirmed the continuing vitality of the *Barrentine* . . . line of cases." (*Albertson's, Inc. v. United Food* (9th Cir. 1998) 157 F.3d 758, 761.)

An individual arbitration agreement also does not apply to an action to enforce statutes governing collection of unpaid wages, which "may be maintained without regard to the existence of any private agreement to arbitrate. . . ." (§ 229.) The intent is to assure a judicial forum where there exists a dispute as to wages, notwithstanding the strong public policy favoring arbitration. (*Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 43 [100 Cal.Rptr. 791]; *Flores v. Axxis Network & Telecommunications, Inc.* (2009) 173 Cal.App.4th 802, 811 [93 Cal.Rptr.3d 1].) An exception to the general rule occurs when there is federal preemption by the FAA, as applied to contracts evidencing interstate commerce. (*Perry v. Thomas* (1987) 482 U.S. 483, 490 [96 L.Ed.2d 426, 107 S.Ct. 2520].)

AIL argues the CBA and the agent contract evidence a transaction involving interstate commerce, relying on cases involving employment agreements. (*Thorup v. Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228, 233 [225 Cal.Rptr. 521] [employment agreement between stock brokerage and its account executive involves interstate commerce and is subject to FAA]; *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 113 [149 L.Ed.2d 234, 121 S.Ct. 1302] [rejecting argument that "an employment contract is not a 'contract evidencing a transaction involving interstate commerce' " subject to FAA].)

Based on this record, it cannot be said the subject agreement involves interstate commerce. AIL had the burden to demonstrate FAA coverage by declarations and other evidence. (*Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1101 [56 Cal.Rptr.3d 326]; *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 213–214 [25 Cal.Rptr.3d 426].) The only established facts are that Hoover was a California resident who sold life insurance policies. Even though AIL is based in Texas, there was no evidence in the record establishing that the relationship between Hoover and AIL had a specific effect or "bear[ing] on interstate commerce in a substantial way." (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 57 [156 L.Ed.2d 46, 123 S.Ct. 2037].) Hoover was not an employee of a national stock brokerage firm or the employee of a member of a national stock exchange. (*Thorup v.*

*Dean Witter Reynolds, Inc., supra,* 180 Cal.App.3d at p. 233; *Baker v. Aubry* (1989) 216 Cal.App.3d 1259, 1266 [265 Cal.Rptr. 381].) Unlike the plaintiff in *Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1287 [58 Cal.Rptr.3d 5], Hoover did not work in other states or engage in multimillion dollar loan activity that affected interstate commerce by negotiating with a bank that was headquartered in another state. Under these circumstances, if the FAA did not apply, the exception favoring federal preemption and arbitration did not operate.

AIL further contends that Hoover agreed to arbitrate her statutory wage claims under the agent contract and the CBA. AIL maintains that the broad language of the arbitration provision covers any disputes between Hoover and AIL, including those which involve statutory wage claims, which AIL also argues that Hoover, as an independent contractor, has no right to assert.

Here the rights accorded by sections 203, 1194, and 2802 may not be subject to negotiation or waiver. (*Valles v. Ivy Hill Corp.* (9th Cir. 2005) 410 F.3d 1071, 1081–1082; *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 954, 959–960 [35 Cal.Rptr.3d 243] [state-mandated minimum labor standard is nonwaivable and nonabridgeable by contract].) AIL also points to no contractual provision under which Hoover expressly agreed to arbitrate any violations of statutory rights. (*Cicairos*, at pp. 959–960.) For an arbitration clause to operate for individual statutory claims, there must be a clear and unmistakable waiver of a judicial forum. (See *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434–436 [95 Cal.Rptr.2d 294]; *Flores v. Axxis Network & Telecommunications, Inc., supra,* 173 Cal.App.4th at p. 807.) In determining whether there has been a sufficiently explicit waiver of a judicial forum, courts look to the generality of the arbitration clause; the explicit incorporation of statutory requirements; and inclusion of specific statutes, identified by name or citation. (*Vasquez*, at pp. 434–435.)

The agent contract does not mention the arbitration of statutory claims or identify any statutes. Instead, the language of the agent contract describes its scope as applying to "any dispute or disagreement arising out of or relating to this contract" and "all disputes, claims, questions, and controversies of any kind or nature arising out of or relating to this contract." Even if the parties could resolve statutory rights violations through arbitration, there is no provision in the agent contract or the CBA where Hoover agreed to do so. Even if the issues of minimum wage, reimbursement, and earned wages could be construed as subjects of the two contracts, Hoover still did not agree to arbitrate her statutory labor claims. The agent contract does not reflect an agreement to arbitrate Hoover's claims, as asserted under state law, rather than her claims under the contract.

Hoover's lawsuit represents an effort to enforce nonwaivable statutory rights, not an attempt to enforce compliance with the agent contract or the CBA. (*Tracy Educators Assn. v. Superior Court* (2002) 96 Cal.App.4th 530, 538 [116 Cal.Rptr.2d 916].) Certainly, the injunctive relief claim under the unfair competition law (Bus. & Prof. Code, § 17200) is not arbitrable. (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315–316 [133 Cal.Rptr.2d 58, 66 P.3d 1157]; *Brown v. Ralphs Grocery Co., supra,* 197 Cal.App.4th at pp. 500–501.) In summary, Hoover's dispute with AIL does not arise under the agent contract or the CBA. Regardless of whether the agent contract and the CBA include a broad arbitration provision, the arbitration provision did not encompass Hoover's statutory claims. The agent contract and the CBA do not require Hoover to arbitrate her statutory labor claims. (*Zavala v. Scott Brothers Dairy, Inc., supra,* 143 Cal.App.4th at pp. 592–596.)

IV

DISPOSITION

In this fluid and volatile area of the law, the trial court assessed AIL's motion properly and correctly denied the petition to compel arbitration of Hoover's individual statutory wage claims.

We affirm the trial court's order. Hoover as the prevailing party shall recover her costs on appeal.

McKinster, Acting P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 12, 2012, S204218.